# FAUST v. CRUMLEY.

Eastern Section.   January, 1932.

Petition for Certiorari denied by Supreme Court, April, 1932.

E. N. Rogers and N. B. Morrell, both of Knoxville, for Faust.
Mynatt & Mynatt and J. D. Pope, all of Knoxville, for Crumley.

SNODGRASS, J.   The case originated before a justice of the peace, the warrant stating the cause of action as follows:

"Summon H. D. Faust, Sterchi Park, to appear before me or some other Justice of the Peace for. said county to answer the complaint of Roy Crumley in a plea of debt due by commission from drink concessions at 1930 East Tennessee Division Fair of $312.50 under $500."

The warrant was issued by John L. Mynatt, justice of the peace, and the cause was tried before him, who gave judgment against the defendant for the sum of $312.50 when it was appealed by the said Faust to the circuit court, where it was tried before his honor, Judge Grimm, without the intervention of a jury; the plaintiff recovering a judgment for $311.71.

After his motion for a new trial was made and overruled, the defendant has again appealed, making assignments that:

(1) "The evidence preponderates against the judgment."

(2) "There is no evidence to support the judgment."

(3) "That Mr. Faust, not being a member of the Park Refreshment Company in 1929, was in no way liable for this bottling debt; but having entered into an agreement with Crumley that this debt should be paid out of the 1930 enterprise, he was justified in paying the debt."

This suit involves transactions occurring through the disposition of refreshment concessions of the East Tennessee Division Fair in the years 1929 and 1930. The plaintiff in one form or other, it was shown, had been connected with the business of these concessions for some years previous. But for the year 1929, he and one Mr. Cottrell were interested together in the stand or stands conducted by him. The plaintiff said he had taken these stands on a fifty-fifty basis of the net profits and that Mr. Faust authorized him to turn his money over every night to Mr. Cottrell; that Mr. Cottrell would take the money to the office and put it in the bank next morning; he supposed that he did not know where it went. He testified further:

"In 1929, at the end of the season, when we settled up, Mr. Cottrell gave me my fifty per cent of what was coming to me and showed me the receipt book of where everybody was paid, and it showed everybody had been paid, showed stub check book where Nehi had a check for $623.50 and I thought the bill was paid because I had turned the money into the office, and he taken it out of my part to pay it, deducted $311.75 from my part to pay them—. . .

"Then after Mr. Cottrell killed himself the Nehi stand sent Mr. Faust a bill for $623.50. Mr. Faust came to see me, and I said 'Mr. Faust, what can I do about it?' I had no authority to pay bills. I said 'There is only one thing I can promise you, if I run the stand in 1930 I will make you enough profit for your part to pay the bill.' And I did. Then he taken out $311.75 again out of 1930 receipts, from my part of the receipts. I never made any trade with Mr. Cottrill whatever for the stands, I made the trade directly with Mr. Faust, but I was to turn the money over to Mr. Cottrell, and he was to pay the bills, and I was to get fifty per cent of the net profits of what was sold."

Mr. Faust was secretary and manager of the East Tennessee Division Fair and had been so for a long number of years, and testified that Mr. Cottrell was concession manager for the fair, and for the park season he was superintendent of the park.

He testifies that by superintendence of the concessions during the fair, the position would last about one week.

With respect to Mr. Cottrell's duties, Mr. Faust said:

"He took the money from the concessions each evening and then put into the fair fund the percentage, the park's percentage of that, and the balance of the money he would take it out, and he would put that in different sacks, and he would turn it over to the different concessionaires at the park. He took the entire amount for each concession, and took out the fair's part, after he checked to see

if there was any shortage or overcharge, and rendered a report, and turned it into the fair fund each day. That was what I was interested, is what the East Tennessee Division Fair got out of it. What they did with the rest of the money, I didn't care.''

He testified that he did not have a particle of control of the Park Refreshment Company in 1929; that from what records he had been able to find, the money belonging to the refreshment company was deposited to its credit and discharged by checks of the company signed by Cottrell.

He was asked:

''Q. What became of the Park Refreshment Company at the beginning of the season of 1930? A. Well, I took Mr. Cottrell's place in the operation with Mr. Crumley. It seemed they had an indebtedness there that Mr. Cottrell had failed to pay and Mr. Crumley was liable so they claimed, for this indebtedness, and he wanted this concession again this year, so I told him, I said, 'Roy I will go down there and let you pay this thing out, we will go into it, but first money we take in has to be paid to the Chero-Cola people,' the first money that was supposed to be paid. Crumley naturally owed the money, so I agreed to go ahead with him and take it over. I said, 'I will tell you, we will take this out of the first money and pay that bill, and then we will go ahead with it, if that is satisfactory.' And it went on that way the entire season. There never was a question about it, he did say once or twice, 'I think it is a shame we have to pay that.' That is the first time I ever heard of this lawsuit, or intimation of anything about a lawsuit. Didn't dream of this one. He said, 'I think it is an awful shame I have to pay for that stuff that Cottrell owed.' He said, 'Wonder if you couldn't get me a lawyer,' said, 'I could sue her on that note, attach that automobile and make something out of it.' I had investigated and been advised we could not make anything after we had gone and settled it, I had paid him everything and settled up with him for some hauling he had done, everything was pleasant, never dreamed the boy was dissatisfied, and he came up and said, 'I think it was a dirty shame I had to pay,' and I said 'It is a shame we all had to pay and lose as we did.' ''

He was then asked by the court: ''Q. Who lost the other half?''

He answered: ''I did. I paid it and it wasn't my debt, except by an agreement if he would go ahead and work it out, I would help him, as I thought, because he was liable for $623 as he was the last of the Park Refreshment Company living.''

He was asked further:

''Q. Did you have anything to do with the Park Refreshment Company, have any interest in it in 1929? A. Not with the drink concession, none whatever, except to see that they paid the East Tennessee Division Fair their percentage. The rest of it I had nothing to do with whatever.

"Q. You had nothing to do in 1929 with the funds outside of the percentage due to the Fair? A. Not a penny—not a thing.

"Q You didn't handle it? A. No, sir.

"Q. Now in 1930 who ordered the drinks? A. Mr. Crumley ordered the drinks. He said he preferred ordering them. Mr. Cottrell had always ordered them before. He said he preferred to order them and I said, 'All right, didn't make any difference, so he would account for what was brought in there.' "

We have given so much of the background of the testimony as aids to the construction to be given the relationship of the parties, for much is left to construction.

We are not inclined to hold under the whole evidence in the case that any partnership existed between Cottrell and Crumley in 1929. Apparently there had been a previous partnership between Cottrell and a Mr. Drumm in the operation of these drink concessions which Faust testified were Park Refreshment Company Stand No. 1 and Stand No. 2, and that Stand No. 2 was the stand that Mr. Drumm operated. He said that after Mr. Drumm died, Mr. Cottrell seemed to think they could handle it. The word "they" we suppose was meant to refer to Cottrell and Crumley, as he continued as follows:

"I gave them the contract—Mr. Cottrell, and he employed Mr. Crumley to dispense with these goods, and they went in together on this proposition." Stating that there was a concession granted in 1929, by the Fair Association to the Park Refreshment Company and on being asked "Who was the Park Refreshment Company?" he replied: "Mr. W. B. Cottrell and Mr. Roy Crumley were the people I looked to." Regarding this Mr. Drumm, Mr. Crumley was asked:

"Q. Did you know a Mr. Drumm that used to be out there before you went there? A. Yes, sir.

"Q. Did you succeed him? A. I worked for him, and after he died I went to work for Mr. Faust."

The situation was ripe for a misunderstanding all round. Mr. Cottrell and Mr. Drumm were the Park Refreshment Company, operating this concession under a contract with Mr. Faust, the fair manager, upon a percentage basis paid to the association. Mr. Crumley did not know the relationship of his employers or the interest which Cottrell had in the business. They never took the trouble to explain. When Drumm died, Cottrell thought that they, meaning himself and his employee, Crumley, could continue the business, and he gave Crumley the directions as to how the business was to be conducted upon a fifty-fifty basis, and the money was to be paid over to Cottrell. Crumley thought he was taking over the stand by contract with Faust and that one-half of the net profits was to be received, not as a partner, but as compensation for his services.

We do not think therefore the proof shows a partnership. It cannot be made for one without his knowledge and consent. The reception of the money from all the concessionaires was a part of the duties

that Cottrell was discharging for the fair. He was therefore an employee, as Crumley thought, of the fair under Faust's orders. We do not therefore think Crumley was ever obligated as a partner of Cottrell who did the ordering and paying for the goods, and never so held himself out as such to the creditors, and was therefore not legally responsible to pay for them unless he made himself so by what occurred between him and Mr. Faust regarding the 1930 concession. Neither do we think Faust was liable in any way for the debts incurred by the refreshment company in 1929. He was not a partner and says he had nothing whatever to do with it except to contract the concessions to them and see that the city got its consideration. It would seem therefore that the Park Refreshment Company or Cottrell really had Crumley employed, giving him one-half the net profits, after the bills had all been paid, for his services. If any one wronged him, it was Cottrell, who it seems euchred him out of a part of his compensation by claiming to have paid the bill about which this controversy revolves.

It is clear that Mr. Cottrell ordered the goods and paid for those that went into the plaintiff's stand in 1929. Mr. Austin, the president and general manager of the Chero-Cola Bottling Company, to whom the account was also going, so testified; that he did not know who constituted the Park Refreshment Company; and that his dealings were with Mr. Cottrell. It seems that Mr. Cottrell died in the spring of 1930 leaving the bill unpaid which he claimed to have payed; and leaving it only a debt against his estate which was also, it would seem, liable to Crumley for one-half of the bill which represented that much as subtracted from his compensation for his services in the year 1929. In this situation an agreement was had between Faust and Crumley that Faust would take Cottrell's place in the refreshment company and that it should continue as a partnership upon the basis of a fifty-fifty division. But Faust says the agreement provided that this debt of $623.50 should be paid out of the first money of the business. This is controverted by Crumley only to the extent of saying that while the money was to be paid out of the business it was to come wholly out of the profits that would be going to Faust. We are constrained to believe and hold from the entire record that the weight of proof supports the insistence of Mr. Faust. Neither of them was obligated to pay it, though Mr. Faust thought it was owed by Crumley, as a partner of Cottrell who had died, and appeared to be willing to enter the partnership and help out with the disposition of the bill in this way for the reasons assigned by him. Under the circumstances, this was the right kind of a division to make. Equality is equity. It was what was done, and where one says it is one way and the other says it is the other way, and where both are credible, the weight of the testimony should be accorded to that testimony that would establish the right of the transaction, the equities of the case. There is evidence in the record tending to establish that Crumley recognized

the obligation as his and talked of attaching an automobile that had been owned by Cottrell and then in possession of his wife, but this is a construction. As a matter of fact, Cottrell did owe him for additional profits that had been concealed by the pretense that this bill had been paid.

As indicated, however, we are satisfied that the weight of the proof as to the agreement about settling the bill out of the 1930 business is with the contention of Faust and that the learned judge was in error in not so holding. The assignments of error are therefore sustained, the judgment is reversed, and the cause will be dismissed at the cost of the defendant in error.

Portrum and Thompson, JJ., concur.